IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**CARL E. MEAD**,

**Plaintiff,**

**v.**                                                      **Cause No. CIV 03-1454 JH/WDS**

**JOE R. WILLIAMS, Secretary of Corrections;**
**ERMA SEDILLO, Deputy Secretary of Corrections;**
**WACKENHUT CORRECTIONS CORPORATION;**
**PATRICK SNEDEKER, Warden;**
**BARRY HERTZOG, Warden of Operations;**
**SANDRA McFADIN, Warden of Programs;**
**GREG DANIEL, Chaplain;**
**L. BRINZSTOOL, Grievance Manager; and**
**MICHAEL BRODIE, Correctional Officer, Acting Property Officer;**
**Defendants.**


**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**[1]

      **THIS MATTER** comes before the Court on Defendants' *Martinez* Report [Document No.

31]. Plaintiff filed a response to the *Martinez* Report (Document No. 32) and Defendants filed a

reply.  (Document 33)  Plaintiff Carl E. Mead is proceeding *pro se* and has brought this civil rights

action under 42 U.S.C. §1983.  The United States Magistrate Judge, having reviewed the pleadings

and the applicable law, recommends that this matter be dismissed with prejudice for the reasons set

forth below.

---

      [1]Within ten (10) days after a party is served with a copy of these findings and
recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to
such findings and recommendations. A party must file any objections with the Clerk of the U.S.
District Court within the ten-day period allowed if that party wants to have appellate review of
the findings and recommendations. If no objections are filed, no appellate review will be
allowed.

**Factual and Procedural Background**

Plaintiff is an inmate at the Lea County Correctional Facility (LCCF) in Hobbs, New Mexico.  In December of 2002 Plaintiff attempted to purchase a deck of tarot cards to assist him in practicing the rituals of his religion, Wicca.  It appears to the Court that Plaintiff was able to obtain preapproval for an outside purchase of a number of items, including the tarot cards.  When the cards were delivered to the prison, prison officials told Plaintiff he could not have them because they were a "fantasy-type card game."

Plaintiff filed a grievance, asserting that he was a Wiccan and that tarot cards were a tool used in his religion.  The relief requested in Plaintiff's grievance was that he be allowed his tarot cards, and that the term "fantasy-type cards" be defined in writing.

LCCF uses a five step grievance process.  Plaintiff's efforts described above constituted Step One.  The Grievance Officer's acceptance of the grievance on December 19, 2002 completed Step Two.  On January 7, 2003 the Grievance Officer completed Step Three by recommending that Plaintiff's grievance be denied.  Recommended grounds for denial were that the Program Warden would not approve the tarot cards to be received by Wicca inmates since they were not on the approved property list, and that Plaintiff had not complied with prison procedures in ordering the cards in the first place.

At Step Four, the prison Warden denied Plaintiff's grievance on January 16, 2003, and the denied grievance was returned to Plaintiff on January 17, 2003.  At Step Five, Plaintiff submitted his department appeal on January 21, 2003.  The State of New Mexico Corrections Department denied Plaintiff's grievance on March 11, 2003, advising Plaintiff that ". . .(b)ased on an interview with religious staff, it was determined that Tarot cards are not an essential part of your religion.  You may still practice Wicca without the use of Tarot cards.  You will not be allowed to have your cards

2

and your grievance is denied."

Plaintiff submitted two more grievances that are relevant to this matter. On January 13, 2003 Plaintiff submitted a grievance alleging that his first grievance should have been resolved, per prison grievance policy, on January 8 but that he had received no response. This grievance was accepted at Step Two, recommended for denial at Step Three, and denied by the Warden at Step Four. Plaintiff did not pursue a Department Appeal at Step Five. Instead, he submitted a new grievance following up on the same issue, which was denied at Step Two with no further appeal.[2]

On January 29, 2003 a second inmate at LCCF, William Caudill, filed a grievance over the institution's refusal to allow him to possess tarot cards. Mr. Caudill was initially advised, like Plaintiff, that tarot cards were "fantasy related material." Mr. Caudill's grievance was denied through Step Four, and he undertook a department appeal. On June 26, 2003 Mr. Caudill's grievance was granted by the Corrections Department ". . .(b)ased on an interview with the Director of the Inmate Faith Based Groups." From that point on, Wiccan inmates at LCCF were permitted to purchase tarot cards and keep them in their possession. Additionally, guidelines were established for group religious activities of Wiccan prisoners.

Plaintiff did not resubmit a request to purchase tarot cards at that time. In 2004 he was transferred to the Penitentiary of New Mexico and then to the Torrance County Correctional Facility. When he was transferred back to LCCF in October 2004, tarot cards were listed as part of his property.

---

[2]Plaintiff alleges that he handed his first grievance to the Grievance Officer on December 9, 2002. The grievance was not logged in until December 19, 2002. Since neither grievance related to this issue was exhausted, the Court declines to address the significance, if any, of the alleged ten-day delay.

Plaintiff's civil rights complaint seeks relief on three grounds: (1) he was denied the possession of tarot cards, which are essential to the practice of his religion; (2) he was denied due process by the failure of the prison's grievance officer to handle his grievances promptly; and (3) he was denied approximately 14 other items, other than tarot cards, essential to the Wiccan religion, both on an individual and group basis.

Defendants have moved for summary judgment dismissing the entirety of Plaintiff's complaint.  Defendant's argue that: (1) Plaintiff's complaint should be dismissed because he did not exhaust administrative remedies; (2) Plaintiff's claims for injunctive relief are moot; (3) Plaintiff's claims for emotional injury fail under the Prisoners Litigation Relief Act; (4) Defendants did not violate Plaintiff's due process or equal protection rights; and (5) Defendants are entitled to qualified immunity.

**Legal Analysis**

**1. Exhaustion of Administrative Remedies**

The Prisoner Litigation Reform Act (PLRA) applies to this action because Plaintiff was incarcerated at the time he filed his complaint.  Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Section 1997e(a) applies whether the prisoner is suing for monetary damages or injunctive relief.  *Booth v. Churner*, 532 U.S. 731 (2001).

Plaintiff filed several grievances that relate to this litigation.  Plaintiff filed and exhausted a grievance related to his personal possession of tarot cards.  Plaintiff filed but did not exhaust several grievances related to the handling of his tarot card grievance.  Plaintiff filed no grievance relating to the broader issue of how the Wiccan religion was accommodated at LCCF.

4

Defendants assert that 10th Circuit law clearly requires the total exhaustion of all administrative remedies before any claim is allowed to proceed.  In other words, Defendants would have the Court dismiss all of Plaintiff's claims, even the procedurally exhausted tarot card claim, because his complaint included unexhausted claims.  Defendant's cite *Ross v. County of Bernalillo*, 365 F.3d 1181, 1188-89 (10th Cir. 2004) in support of this proposition.

However, *Ross* was overruled by *Jones v. Bock*, 549 U.S. 199 (2007).  The two primary holdings of Jones were: (1) prisoners were not required to plead exhaustion of administrative remedies in their complaints, and (2) where a complaint contained exhausted and unexhausted claims, the unexhausted claims would be dismissed and the prisoner could proceed with his exhausted claim.  Accordingly, the Court recommends that Plaintiff's unexhausted claims be dismissed, leaving Plaintiff's exhausted claim relating to the refusal of LCCF to permit personal possession of tarot cards.

## 2. Plaintiff's Claims for Injunctive Relief

Part of Plaintiff's complaint relating to his personal possession of tarot cards for religious purposes is injunctive in nature, i.e., Plaintiff seeks an order that he be allowed to possess tarot cards.  As noted above, LCCF changed its policy on tarot cards for Wiccan prisoners several months after the denial of Plaintiff's grievance.  Furthermore, Plaintiff's property log shows that he is in possession of such cards.  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief. . . if unaccompanied by any continuing, present adverse effects."  *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

Accordingly, Plaintiff's injunctive claims should be dismissed, narrowing Plaintiff's claim to one for damages arising out of LCCF's denial of tarot cards between early December 2002 and June 2003.

5

### 3.  Monetary Damages

Plaintiff's complaint includes a claim for "mental pain and suffering" in the amount of one million dollars.  Section 1997e(e) of the PLRA states "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 807-08 (10th Cir. 1999).  The Court has read Plaintiff's pro se complaint broadly, and finds no claim for, or description of, physical injury sustained by the Plaintiff in connection with his efforts to obtain tarot cards.  Plaintiff's bare claim for mental pain and suffering is not sustainable under §1997e(e) and the Court recommends that this claim be dismissed.

### 4.  Due Process and Procedural Claims

Plaintiff's complaint includes a number of claims that can be characterized as "due process" violations or procedural violations.  These complaints, however, relate to unexhausted grievances that have already been addressed by the Court.  Also, to the extent that Plaintiff objects to the fact that his request for tarot cards was denied, while Mr. Caudill's was granted, it is apparent to the Court that the granting of Mr. Caudill's grievance at Step 5 simply reflected a change in institutional policy, not a denial of equal protection.  Had Plaintiff filed his grievance after Mr. Caudill filed his, it is equally likely that Plaintiff's grievance would have been granted at Step 5, while Mr. Caudill's was denied.  Following the change in institutional policy *both* Mr. Caudill and Plaintiff were allowed to possess tarot cards, so there was no constitutional violation, and the Court recommends that this claim be dismissed.

### 5.  Qualified Immunity

Finally, Defendants have raised qualified immunity as an affirmative defense.  Government officials are entitled to qualified immunity for discretionary acts unless their conduct violated

6

"clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Latta v. Keryte*, 118 F.3d 693, 697 (10th Cir. 1997). The Free Exercise Clause of the First Amendment of the Constitution mandates that prison authorities afford prisoners reasonable opportunities to exercise their sincerely held religious beliefs, subject to prison restrictions that are rationally related to legitimate penological interests. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-349 (1987). The Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C.S. § 2000cc et seq., as applied to prisoners, essentially codifies the First Amendment standard cited above. Under RLUIPA, the government is not permitted to impose a substantial burden on the religious practices of confined persons unless there is a compelling state interest in doing so. See *Cutter v. Wilkinson*, 544 U.S. 709, 720, 125 S. Ct. 2113, 161 L. Ed. 2d 1020 (2005). For a burden to be substantial under RLUIPA, it must be oppressive to the extent that it renders religious exercise "effectively impracticable." *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034-35 (9th Cir. 2004).

In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). If a violation can be made out, the next step is to ask whether the right was clearly established. *Id.* Defendants first argue that they did not violate Plaintiff's First Amendment rights in that "Plaintiff has been afforded tools necessary for the practice of the religion of Wicca consistent with the items afforded those who subscribe to other faiths to practice their religion." Defendants cite material provided to Plaintiff for group services, including tarot cards, but do not address the main issue in the case, the denial of Plaintiff's personal possession of tarot cards in his cell prior to June 2003. Defendants provide justification for the denial of some other items, such

7

as wands, a metallic chalice, and robes, but make no mention of the denial of tarot cards.  While it is true that the personal possession of tarot cards has been allowed in the facility for approximately five years with no apparent negative consequences, this is not conclusive proof that the original ban was not rationally related to legitimate penological interests or did not reflect a compelling state interest.  It is the opinion of this Court that the initial prohibition of personal use tarot cards at LCCF did not violate a constitutional right of the Plaintiff.

At step two of the qualified immunity test, whether the right was clearly established, Plaintiff's claim clearly falls short.  Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.  *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).  At the time this matter arose there was no clearly established right to personal possession of tarot cards for the purpose of practicing the Wiccan faith.  If anything, the weight of case law at that time would have worked against Plaintiff: *Jackson v. Lewis*, 163 F.3d 606, 1998 U.S. App. LEXIS 22636 (9th Cir. 1998)(Prison officials were entitled to summary judgment on the First Amendment claim, because inmate failed to establish that the use of tarot cards was mandated by the Wiccan religion); *Reese v. Coughlin*, 1996 U.S. Dist. LEXIS 9206 (S.D.N.Y. 1996)(Denial of tarot cards to Wiccan inmate was reasonably related to the legitimate concern for prison security).  The issue of accommodation of the religious interests of Wiccan prisoners continues to be litigated.  However, it is clear to the Court that a right to personal possession of tarot cards for Wiccan prisoners was not clearly established prior to June 2003.  Accordingly, in the Court's opinion the Defendants are entitled to qualified immunity in connection with the refusal to allow Plaintiff to possess tarot cards during the period of time prior to June 2003 .

**Recommended Disposition**

The Court recommends that Defendant's Motion for Summary Judgment in the Nature of

a *Martinez* Report [Doc. No. 31] be GRANTED and that Plaintiff's Complaint be dismissed, with

prejudice.

_____

**W. Daniel Schneider**
**UNITED STATES MAGISTRATE JUDGE**